# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID R. GRAHAM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 10-1706 |
| ) | |
| MICHAEL J. ASTRUE, ) | Senior Judge Alan N. Bloch |
| COMMISSIONER OF SOCIAL ) | Magistrate Judge Cathy Bissoon |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is respectfully recommended that Plaintiff's Motion for Summary Judgment (*ECF No. 9*) be denied, and that Defendant's Motion for Summary Judgment (*ECF No. 11*) be granted. It is further recommended that the final decision of the Commissioner of Social Security ("Commissioner") be affirmed.

### II. REPORT

#### A. Background

Plaintiff David R. Graham ("Graham") protectively applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f] on February 27, 2008, alleging disability as of June 2, 2007. R. at 65, 69, 86. The applications were administratively denied on July 15, 2008. R. at 42, 46. Graham responded on August 22, 2008, by filing a timely request for an administrative hearing. R. at 51. On January 21, 2010, a hearing was held in Pittsburgh, Pennsylvania, before Administrative Law Judge William E. Kenworthy (the "ALJ").

R. at 25.  Graham, who was represented by counsel, appeared and testified at the hearing.  R. at 28-35.  Samuel E. Edelmann ("Edelmann"), an impartial vocational expert, also testified at the hearing.  R. at 35-37.

In a decision dated February 11, 2010, the ALJ determined that Graham was not "disabled" within the meaning of the Act.  R. at 6-16.  On February 25, 2010, Graham filed a request for review with the Appeals Council, seeking administrative review of the ALJ's decision.  R. at 61-63.  The Appeals Council denied the request for review on October 26, 2010, thereby making the ALJ's decision the final decision of the Commissioner in this case.  R. at 1.  Graham commenced this action on December 20, 2010, seeking judicial review of the Commissioner's decision.  ECF Nos. 1 & 2.  Graham and the Commissioner filed motions for summary judgment on May 22, 2011, and June 23, 2011, respectively.  ECF Nos. 9 & 11.  These motions are the subject of this Report and Recommendation, which is being submitted in accordance with 28 U.S.C. § 636(b)(1)(B)-(C).

### B. **Standard of Review**

This Court's review is plenary with respect to all questions of law.  *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999).  With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence."  42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994).  The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record.  *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986).  Congress clearly has expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Substantial evidence "does not mean a large or considerable

amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)(internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Secretary of Health, Education & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003)(footnotes omitted).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Securities & Exchange Commission v. Chenery Corp.*, 332 U.S. 194, (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D. Pa. 2005).

C. **The ALJ's Decision**

In his decision, the ALJ determined that Graham had not engaged in substantial gainful activity subsequent to his alleged onset date. R. at 11. Graham was found to be suffering from a history of depression and cannabis dependence, borderline intellectual functioning and a hearing impairment. R. at 11-12. Although his hearing impairment was deemed to be "non-severe," his remaining impairments were deemed to be "severe" within the meaning of 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii) and 416.920(c). R. at 11-12. The ALJ concluded that Graham's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listing of Impairments" or, with respect to a single impairment, a "Listed Impairment" or "Listing"). R. at 12-13.

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ determined that Graham had the residual functional capacity to perform work at all exertional levels involving only simple, repetitive tasks. R. at 13. Graham had "past relevant work"[1] experience as a car washer and an office cleaner. R. at 36. Edelmann classified these jobs as "unskilled"[2] positions at the

---

[1] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.
[2] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, [the Commissioner] consider[s] jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs." 20 C.F.R. §§ 404.1568(a), 416.968(a).

5

"light"[3] level of exertion. R. at 36. Therefore, it was determined that Graham could return to his past relevant work. R. at 15.

Graham was born on December 11, 1961, making him 45 years old on his alleged onset date and 48 years old on the date of the ALJ's decision. R. at 15, 65, 69, 86. He was classified as a "younger person" under the Commissioner's regulations. 20 C.F.R. §§ 404.1563(c), 416.963(c). He had a limited education and an ability to communicate in English. R. at 15, 107; 20 C.F.R. §§ 404.1564(b)(3), (5), 416.964(b)(3), (5). Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Graham could work as a hotel cleaner or machine tender even if he could not return to his past relevant work. R. at 15-16. Edelmann's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).[4] R. at 36.

### D. Analysis

Graham challenges the ALJ's finding at the third step of the sequential evaluation process, contending that a finding of *per se* disability under Listing 12.05C was warranted. ECF No. 10 at 6-24. The ALJ, of course, concluded that Graham's impairments did not meet or medically equal a Listed Impairment. R. at 12-13. The propriety of this determination is the only issue presently before the Court.

The Listing of Impairments describes impairments which render a claimant *per se* disabled without regard to his or her age, educational background, or past work experience.

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

[4] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

*Bowen v. Yuckert*, 482 U.S. 137, 153 (1987); *Knepp v. Apfel*, 204 F.3d 78, 85 (3d Cir. 2000). In order to qualify as *per se* disabled at the third step of the sequential evaluation process, a claimant must demonstrate that his or her impairment (or combination of impairments) either "matches" a Listing or is "equivalent" to a Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530-531 (1990). An impairment "matches" a Listing only if it satisfies *all* of the relevant medical criteria. *Id.* at 530. An impairment is "equivalent" to a Listed Impairment only if it is supported by medical findings equal in severity to *all* of the criteria applicable to the most similar Listing. *Id.* at 531. The claimant bears the burden of presenting evidence in support of his or her allegation of *per se* disability. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

The language contained in Listing 12.05C provides:

> 12.05 *Mental retardation*: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> ***
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . . .

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05C (emphasis in original). The Commissioner's regulations define the term "severe impairment" as "any impairment or combination of impairments which significantly limits [a claimant's] ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). Any impairment that constitutes a "severe" impairment under the Commissioner's regulations "impos[es] an additional and significant work-related limitation of function" within the meaning of Listing 12.05C. *Markle v. Barnhart*, 324 F.3d 182, 188 (3d Cir. 2003). The ALJ determined that Graham suffered from "severe"

7

impairments other than his alleged "mental retardation." R. at 11-12. The disputes between the parties center on the general language of Listing 12.05 and the specific requirement that a claimant proceeding under Listing 12.05C produce "[a] valid verbal, performance, or full scale IQ of 60 through 70."

During the course of a Wechsler Intelligence Test conducted by James P. McCabe ("McCabe") on May 18, 1972, Graham received a verbal IQ score of 69, a performance IQ score of 80, and a full scale IQ score of 72. R. at 124. Graham was tested again on January 13, 1975. R. at 126-127. After conducting the test, Francis W. Balombiny ("Balombiny") reported that Graham had received a verbal IQ score of 69, a performance IQ score of 89, and a full scale IQ score of 76. R. at 126.

On June 21, 2008, Dr. Lanny Detore performed a consultative psychological evaluation of Graham in connection with his applications for DIB and SSI benefits. R. at 161-167. A Wechsler Adult Intelligence Scale III ("WAIS-III") test was conducted during the evaluation. R. at 161. In a written report detailing the results of the evaluation, Dr. Detore stated that Graham had "obtained a verbal IQ score of 71, a performance IQ score of 80, and a full-scale IQ score of 74." R. at 163. According to Dr. Detore, these scores placed Graham "within the low borderline range of general intelligence." R. at 163. Dr. Manella Link, a nonexamining medical consultant, opined on June 30, 2008, that Graham's medically determinable impairments did not "precisely satisfy the diagnostic criteria" applicable under Listing 12.05C. R. at 177.

In the portion of the administrative opinion challenged by Graham, the ALJ stated:

> Turning back to listing 12.05, the claimant's counsel contends that listing 12.05C is met. However the "paragraph C" criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. The claimant's attorney contends in a prehearing submission that the claimant meets listing 12.05C based upon the

8

results of IQ testing performed at school in 1972 when he scored a verbal IQ of 69. However, the more recent testing in June, 2008, by Dr. Detore produced the following results: verbal IQ 71, performance IQ 80, full-scale IQ 74, placing him within the borderline range of intelligence. Dr. Detore opined that the results were a valid measurement of the claimant's intellectual functioning. These results are considered to be the valid measure particularly since they are more recent than those obtained at school in 1972. Moreover it is noted that for a variety of reasons one can score lower on IQ [sic] test than the actual intelligence, but it is not possible to score higher. Finally, a finding of mental retardation also would have to be based on additional evidence of deficits in adaptive functioning. On the contrary, the claimant has a history of stable employment in his post-high school years. He also has a driver's license and drives a car on a daily basis to and from work.

R. at 13. Graham contends that the ALJ erred in relying on the "more recent" verbal IQ score of 71 found by Dr. Detore rather than on the earlier verbal IQ scores of 69 found by McCabe and Balombiny. ECF No. 10 at 9-15. Graham also argues that he did not have to prove that he had experienced "deficits in adaptive functioning" in order to meet the requirements of Listing 12.05C, and that the ALJ erred in stating to the contrary. *Id.* at 17-24. The Court need not consider the second argument, since the first argument clearly lacks merit.

Graham asserts that the Commissioner's regulations *required* the ALJ to rely on his lowest verbal IQ score in determining whether he was *per se* disabled under Listing 12.05C. ECF No. 10 at 9-15. In support of his argument, Graham relies on the following language in 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.00D(6)(c):

> Due to such factors as differing means and standard deviations, identical IQ scores obtained from different tests do not always reflect a similar degree of intellectual functioning. The IQ scores in 12.05 reflect values from tests of general intelligence that have a mean of 100 and a standard deviation of 15; e.g., the Wechsler series. IQs obtained from standardized tests that deviate from a mean of 100 and a standard deviation of 15 require conversion to a percentile rank so that we can determine the actual degree of limitation reflected by the IQ scores. In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05.

9

20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.00D(6)(c). Graham contends that the ALJ contravened this regulation by applying the verbal IQ score of 71 found by Dr. Detore in 2008 rather than the verbal IQ scores of 69 found by McCabe and Balombiny in 1972 and 1975. ECF No. 10 at 14.

The argument advanced by Graham is based on a misreading of Listing 12.00D(6)(c). The language of the regulation plainly provides that the lowest score must be used "where more than one IQ is customarily derived from the *test* administered." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.00D(6)(c)(emphasis added). The word "test" is used in the singular form. The rule established by this regulation clearly mandates that the lowest IQ score from the *same test* be used when multiple IQ scores are obtained. The example described in the regulation specifically refers to a situation "where verbal, performance and full scale IQs are provided in the Wechsler series," which is precisely the situation in this case. *Id.* In this situation, the ALJ was required to apply Graham's verbal IQ score of 71 rather than his performance IQ score of 80 or his full scale IQ score of 74. This construction of the regulatory language is consistent with the language of Listing 12.05C, which can be satisfied only where a claimant produces "[a] valid verbal, performance, *or* full scale IQ of 60 through 70." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05C (emphasis added). The regulation's use of the word "or" supports a disjunctive reading, indicating that the lowest of the "verbal," "performance" and "full scale" IQ scores should be applied. *Chalmers v. Shalala*, 23 F.3d 752, 755 (3d Cir. 1994). The scores available for consideration are the "verbal," "performance" and "full scale" IQ scores obtained during the same "test." It is the "lowest" of these three scores that must be applied. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.00D(6)(c). The regulatory language does not support Graham's argument that the ALJ was *required* to choose

the "lowest" of the "verbal" IQ scores obtained during three different tests. Indeed, the United States Court of Appeals for the Third Circuit specifically stated in *Markle v. Barnhart*, 324 F.3d 182, 186 (3d Cir. 2003), that "the Commissioner is not required to accept a claimant's IQ scores and may reject scores that are inconsistent with the record."

The ALJ did not abuse his discretion in choosing to rely on Graham's "more recent" IQ scores. R. at 13. The Commissioner's regulations explicitly recognize that "IQ test results obtained between ages 7 and 16 should be considered current for 4 years when the tested IQ is less than 40, and for 2 years when the IQ is 40 or above." 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 112.00D(10). Graham first obtained a verbal IQ score of 69 when he was 10 years old. R. at 124. He obtained a second verbal IQ score of 69 at the age of 13. R. at 126. As the Commissioner points out, these scores had already been outdated for more than three decades when Graham filed his applications for DIB and SSI benefits. ECF No. 12 at 20. After a test conducted on June 21, 2008, Dr. Detore reported that Graham had obtained a verbal IQ score of 71. R. at 163. This score, of course, was not low enough to satisfy the specific criteria of Listing 12.05C. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05C.

In his opinion, the ALJ remarked that an individual could potentially "score lower" on an IQ test than his or her "actual intelligence" would warrant, but that it was "not possible" for him or her to "score higher." R. at 13. Graham attributes this statement to the ALJ's own "lay opinion." ECF No. 10 at 15. The precise basis for the ALJ's remark, however, is not what matters. The dispositive factor is that the *only* current IQ scores contained in the record (*i.e.*, the IQ scores reported by Dr. Detore on June 21, 2008) were too high to fall within the specific requirements of Listing 12.05C. R. at 163. Dr. Link had access to those scores when he opined that Graham was not *per se* disabled. R. at 172-173, 177. Under these circumstances, it cannot

be said that the ALJ impermissibly relied on his own lay opinion in rejecting Graham's allegation of *per se* disability. *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)(explaining that an administrative law judge cannot rely on his or her "lay opinion" to reject competent medical evidence). Since Graham cannot satisfy the requirements of Listing 12.05C in any event, the Court need not consider whether the ALJ erred in his application of the general language found in Listing 12.05. *Zebley*, 493 U.S. at 530-531 (explaining that a claimant must meet *all* of the applicable criteria in order to be *per se* disabled under a Listing).

Graham does not challenge the ALJ's residual functional capacity assessment. Nevertheless, that assessment is undoubtedly "supported by substantial evidence." 42 U.S.C. § 405(g). Dr. Tegendra S. Wallia, Graham's primary care physician, opined on April 3, 2008, that Graham had no physical limitations. R. at 144-145. Dr. Wallia's assessment provided the ALJ with a legitimate basis for determining that Graham was physically capable of performing "a full range of work at all exertional levels." R. at 13. Although Dr. Detore found Graham to be "markedly" limited in his ability to understand, remember and carry out detailed instructions, the ALJ accommodated that deficiency by limiting Graham to jobs requiring the performance of only "simple, repetitive tasks." R. at 13.

At the hearing, Graham testified that he was working between 20 and 25 hours per week as a janitor. R. at 28-29. The ALJ reasoned that since Graham could work on a part-time basis, "there [was] no reason why he could not perform similar work on a full-time basis." R. at 14. The ALJ's conclusion finds support in the Commissioner's regulations, which recognize that a claimant's ability to perform the duties of a part-time job may be indicative of an ability to maintain a full-time job. 20 C.F.R. §§ 404.1571, 416.971. Furthermore, the ALJ correctly

observed that no treating or examining physician had found Graham to be "totally disabled." R. at 14.

Having reviewed the record in detail, the Court notes that a discrepancy exists between Edelmann's testimony at the hearing and the ALJ's finding at the fourth step of the sequential evaluation process. In response to a hypothetical question describing an individual who was limited to a range of "medium"[5] work involving the performance of only simple, repetitive tasks, Edelmann testified that such an individual *could not* work as a car washer or an office cleaner. R. at 36. In his opinion, the ALJ made reference to Edelmann's testimony in determining that Graham *could* return to his past relevant work. R. at 15. Edelmann's answer to the question posed by the ALJ appeared to be inconsistent with his own characterization of Graham's prior positions as "unskilled" jobs at the "light" level of exertion. R. at 36. The Commissioner's regulations presume that an individual who can perform "medium" work is likewise capable of performing "light" work. 20 C.F.R. §§ 404.1567(c), 416.967(c). In this respect, Edelmann's testimony did not make sense. This discrepancy may be attributable to misspoken words, a linguistic ambiguity or a transcription error. As far as the Court can tell, however, Edelmann did not testify that Graham could return to his past relevant work. R. at 36.

Assuming *arguendo* that the ALJ erred at the fourth step of the sequential evaluation process by relying on mischaracterized or misunderstood testimony, his alternative findings at the fifth step provide an independent basis for sustaining his decision. *Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005)(concluding that a remand was not required "because it would not affect the outcome of the case"). The ALJ's hypothetical question described an individual who was *more* limited than Graham (*i.e.*, an individual who was limited not only to the

---

[5] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

performance of "simple, repetitive tasks," but who was also limited to "medium" work). R. at 36. Edelmann testified that such an individual could work as a hotel cleaner or machine tender. R. at 36. The ALJ relied on this testimony in determining that jobs consistent with Graham's residual functional capacity existed in the national economy. R. at 15-16. Since the ALJ's hypothetical question incorporated all of Graham's limitations, Edelmann's testimony satisfied the Commissioner's burden at the fifth step of the process. *Johnson v. Commissioner of Social Security*, 529 F.3d 198, 206 (3d Cir. 2008). Accordingly, any mistake made by the ALJ at the fourth step was inconsequential.

### E. Conclusion

Since Graham cannot satisfy the specific requirements of Listing 12.05C, he cannot impugn the ALJ's determination at the third step of the sequential evaluation process. The Commissioner's "final decision" denying Graham's applications for DIB and SSI benefits is "supported by substantial evidence." 42 U.S.C. § 405(g). It is respectfully recommended that Graham's Motion for Summary Judgment (*ECF No. 9*) be denied, that the Commissioner's Motion for Summary Judgment (*ECF No. 11*) be granted, and that the administrative decision of the Commissioner be affirmed.

In accordance with the Magistrates Act, 20 U.S.C. § 636(b)(1) (B) and (C), and Rule 72.D.2 of the Local Rules for Magistrates, objections to this Report and Recommendation must be filed by October 3, 2011. Failure to file objections will waive the right to appeal. Brightwell v. Lehman, 637 F.3d 187, 193 n.7 (3d Cir. 2011). Responses to objections are due by October 20, 2011.

September 16, 2011                                                 s\Cathy Bissoon
                                                                                        Cathy Bissoon
                                                                                        United States Magistrate Judge

cc (via ECF email notification):

All Counsel of Record